JAMES DE BLOIS v. GREAT NORTHERN RAILWAY COMPANY.[1]

January 4, 1898.

Nos. 10,764—(209).

Railway—Depot Grounds—Unsafe Condition of Premises—Invitation to the Public.

Whenever the owner or occupant of real property, in the absence of malice, has been held liable because of the unsafe condition of his premises, the gist of the liability has consisted in the fact that the person injured did not act merely for his own convenience and pleasure, and from motives to which no act of the owner or occupant contributed, but that he entered upon the premises because he was led to believe that they were intended to be used by visitors or passengers, and that such use was not only acquiesced in by the owner or occupant, but that it was in ac-

[1] Reported in 73 N. W. 637.

cordance with the intention and design with which the way or place was adapted and prepared or allowed to be used.

**Same—Ice—Personal Injuries—Negligence.**

Defendant had set apart at the north end of its depot grounds and platforms a place connecting with a public thoroughfare for the use of persons who were about to depart upon its trains, or had arrived thereon, or who had business at its depot· building. Its platform extended south some distance beyond the depot building, terminating within a few feet of a water tank, between its "house" and main tracks, and in a part of its grounds which were obviously designed and used for its own business. At the end of the platform were steps, intended for the use of its trainmen and other employees. For their own convenience, and to shorten the way, some of the patrons of the defendant went over this part of the yard and upon these steps when going to or returning from the depot building. But there was no invitation for them to do so extended by the defendant. Plaintiff, in going upon this part of the yard at night, after having been at the depot building on business, fell upon ice which had accumulated on the ground near the steps, and was injured. *Held*, that he had no cause of action against defendant company.

**Appeal — Judgment Notwithstanding the Verdict — Review of Evidence.**

On an appeal from a judgment ordered by the court notwithstanding a verdict (Laws 1895, c. 320), any action of the trial court when admitting or rejecting evidence, and assigned as error by appellant, may be reviewed.

Action in the district court for Sherburne county to recover $25,000 damages for personal injuries sustained by plaintiff. From a judgment for defendant notwithstanding a verdict of $1,500 in favor of plaintiff, entered pursuant to order of Searle, J., plaintiff appealed. Affirmed.

*McLaughlin, Boyesen & Donohue*, for appellant.

*C. Wellington*, for respondent.

COLLINS, J.

Defendant's depot grounds at Princeton, with its buildings, platforms and other structures, are of the size and character usually found in a town of 1,500 inhabitants. The tracks, four in number, —one main and two "yard" in front of the depot building; the other, called the "house" track, in the rear,—ran north and south, the building itself facing to the west. The platform is nearly three

hundred feet long, the depot building being about in the center. In front of this building, and to the north, the platform is twelve feet wide, while south of the building the width is but six feet. The north end of the platform abuts on a public street, and it is this point, and between it and the east and west platform on the north of the building that is set apart by defendant for the use of the public as a means of ingress and egress to and from the depot building and adjoining platforms. The south end of the platform terminated about 22 feet from a water tank, and beyond this, all being within the triangular-shaped piece of depot ground lying between the main track on the west and the house track on the east, are a pump house and other structures. There are three steps at the south end of the six-foot platform, leading down to the ground.

This triangular-shaped piece of ground south of the depot building is used by defendant for the storage of wood and bulky articles of freight. It has never been kept open for the use of the public, nor had the latter, by any act of the defendant, been invited or induced to use this ground as a means of ingress or egress, although the evidence tended to show that for years pedestrians having business at defendant's depot buildings had to some extent, and to shorten distance, traveled over the south platform, the steps, and portions of the tract of ground south thereof between the main and the house track; and had also traveled upon the main track south of the steps, especially when there was snow upon the ground, and the streets in the vicinity were not cleared as well as the track. On the ground south of the platform-steps ice usually formed in the winter season from water overflowing or leaking from the tank, and of this plaintiff well knew. And this ordinary condition as to the formation of ice about the steps and track existed on the night plaintiff was injured.

Having business at the depot building, he had gone there by the usual and customary route upon the public street to the north end of the platform, and thence south to the building. About 10:30 p. m. he started to go home, his residence being southwest of the grounds, and, to shorten the distance, walked along the south platform, down the steps, and upon the ice there accumulated. Just

at this time a freight train was moving northerly upon the main track at about four miles an hour. Upon taking the second step after reaching the ice, plaintiff slipped, fell partially under the wheels of one of the moving cars, and received the injuries complained of. The preliminary question is whether, under these circumstances, the plaintiff can be permitted to recover; the negligence, upon which the right is predicated, being that defendant company failed to do its duty when it permitted the ice to accumulate and to remain about the steps.

It is the contention of counsel for the plaintiff that the place where their client slipped and fell was an approach to the south platform, used by the public, and which should have been kept as safe for travel as the approach on the north; or, if this be not strictly true, that the place had been used by defendant's patrons for ingress and egress, and this use had been so long continued, open and notorious that there was an implied invitation to use it, by reason of which there arose an obligation to keep this part of the grounds in a safe condition for pedestrians.

The size and general appearance of depot grounds, and the uses to which different portions are put, in a town of the size of Princeton, are well known. It is also well known that a place connecting with a public thoroughfare is set apart as an approach to the platforms, that steps are provided by which to reach the latter, and that these portions of the platforms are lighted up at night, for the benefit of the traveling public, if trains are expected. There is an express invitation on the part of railway companies to their patrons to use these approaches. We also know that for the convenience of those who may go upon or alight from the trains long platforms are built, which are not needed or used for approaches to the depot buildings except by those who alight from the trains and for employees. And we also know that, if necessary, steps are placed at the ends of these platforms, not for the convenience of persons who are about to take the trains, but for the trainmen and other employees who may have occasion to go from the front or rear of long trains to the depot buildings.

That these steps are put in at the ends of platforms opposite to the ends set apart for travelers, and that patrons of the railroad corpo-

ration sometimes use them and the adjacent grounds, as a convenience to themselves when going to or away from the depot buildings, falls far short of establishing an obligation on the part of the railway companies to bestow upon them, or upon the contiguous grounds, the care which is required in respect to that part of the premises specially set apart for the use of travelers when approaching depot buildings or departing therefrom. It is perfectly plain that such part of defendant's grounds as laid south of the platform was designed solely for its use, and not for the use of the public in getting to and from the depot buildings; and that the steps were for the convenience of trainmen and other employees who might have occasion to pass that way.

Defendant could not fence its grounds, nor could it well adopt any other means to keep people off from this part of its premises. And, at most, the evidence tends to show that the defendant was merely passive, and that those who went there did so by sufferance only. The locality, and the use made of it by defendant, should have excluded from the minds of those who went there any idea that they were invited that way, or that it was a passage to or from the depot buildings; and no one went there possessed with a belief that the defendant company intended that they should use that means of getting to or from its place of business.

The whole law upon the subject was well stated in Akers v. Chicago, 58 Minn. 540, 545, 60 N. W. 669, thus:

"Whenever the owner or occupant, in the absence of malice, has been held liable because of the unsafe condition of his premises, according to every well-considered case, 'the gist of the liability consists in the fact that the person did not act merely for his own convenience and pleasure, and from motives to which no act of the owner or occupant contributed, but that he entered upon the premises because he was led to believe that they were intended to be used by visitors and passengers, and that such use was not only acquiesced in by the owner or person in possession, but that it was in accordance with the intention and design with which the way or place was adapted and prepared or allowed to be used.'"

Applying this rule to the facts, the plaintiff could not recover. We do not want to be understood as holding that a railway corpo-

71 M.—4

ration could not permit a part of its grounds, occupied as this ground was, to be so used as to lead its patrons to believe that the place was intended for their convenience as a means of ingress to, and egress from, depot buildings, but simply that no such case was here presented, and that, under circumstances like those now before us, a plaintiff has no cause of action.

There are several assignments of error argued by counsel for plaintiff relating to rulings made by the court when receiving the testimony, and the point is made by defendant's counsel that, as the appeal is taken from a judgment ordered by the court, notwithstanding the verdict (Laws 1895, c. 320), any action of the court in admitting or rejecting evidence cannot be reviewed. This point is not well taken, for such a judgment does not, in so far as it is reviewable, differ from judgments entered in accordance with verdicts. But none of the assignments are well taken, and none need special mention.

Judgment affirmed.