TONKA TOURS, INC., Appellants,

v.

Jay CHADIMA, Respondent,

Jack Harris, et al., Respondents.

No. C5–84–49.

Court of Appeals of Minnesota.

Sept. 11, 1984.

Robert W. Kettering, Jr., Arthur, Chapman & Michaelson, P.A., Minneapolis, for appellant.

Kay Nord Hunt, Lommen, Nelson, Sullivan & Cole, P.A., Minneapolis, for Jay Chadima.

Harvey N. Jones, Hertogs, Fluegel, Sieben, Polk, Jones & Laverdiere, Hastings, for Jack Harris et al.

Heard, considered and decided by POPOVICH, C.J., and LESLIE and CRIPPEN, JJ.

## OPINION

POPOVICH, Chief Judge

Appellant (buyer) appeals from the trial court's judgment in favor of respondents (seller and agent) in a suit involving the sale of a 52 foot boat. Appellant claims the trial court erred by finding appellant did not effectively reject the boat. Appellant also claims the trial court erred in finding the parties' conduct modified their sales contract. We reverse and remand.

### FACTS

In the fall of 1981, Tonka Tours, Inc. contracted to purchase a 52 foot houseboat from Jay Chadima. The purchase price was $69,500. Tonka gave a $7,500 down payment agreeing to pay the balance of $62,500 on or before the closing date of February 15, 1982.

The contract listed several repair items that were to be completed prior to closing. These items included:

(1) Port engine temperature gauges;

(2) 12 volt electrical system equipment;

(3) Port engine and transmission repaired per satisfaction of R.G. Gray, Jr.;

(4) Railings repaired or replaced as necessary; and

(5) Generator repair as necessary.

At the time of closing, none of these items were repaired. The broker, Jack Harris, assured appellant the repairs would be completed soon. Appellant relied on these assurances and proceeded with the closing, accepted the escrow and selected a mechanic to complete the repairs.

Obtaining immediate title was necessary for appellant to secure financing and license the boat in time to begin its charter business in the spring. Harris knew in 1981 that appellant wanted the boat by "ice-out" on Lake Minnetonka in the spring of 1982. The boat needed modification, and safety equipment needed to be installed

before it could be used for charters. The boat was not repaired until May 1, 1982.

On May 1, 1982, appellant attempted to transport the boat from the marina in Prescott, Wisconsin to Lake Minnetonka. Although appellant had test driven the boat the prior fall, this was the first time appellant operated the boat after the repairs were made. The boat was to be driven from Prescott to Stillwater, Minnesota where it would be loaded on a truck. The boat had been operated one half hour when the starboard engine overheated and had to be shut off. Shortly thereafter, the transmission on the port engine seized up. The boat was towed back to Prescott. Appellant authorized the repairman to make all necessary repairs.

Two days later Richard Gray, appellant's agent, telephoned Harris and indicated they were "rescinding our deal." The telephone call was confirmed by a letter from appellant's attorneys dated May 12, 1982. As of that date, appellant had secured only a few reservations for their new charter business. In April 1983, appellant sold the boat at a loss.

A court trial was held and the trial court entered judgment in favor of respondents. The trial court found appellants did not make an effective rejection or revocation. The trial court also held the parties' conduct modified the sales agreement, extinguishing respondents' obligation to complete the repair items. Appellant did not make a motion for a new trial but appealed from the judgment.

## ISSUES

1. Did appellant effectively reject the boat?

2. Did the parties' conduct modify the sales agreement, extinguishing the seller's duty to repair?

## ANALYSIS

■ 1. Appellant did not make a motion for a new trial. Consequently, the scope of review on appeal is limited to "whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment." *Gruenhagen v. Larson,* 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976); *see also Pierce v. National Farmers Union Property & Casualty Co.,* 351 N.W.2d 366 (Minn.Ct. App.1984) (purpose of motion for new trial is to permit correction of errors by trial court and avoid expense of appeal).

The trial court found appellant accepted the boat by closing the sale, accepting an escrow sum for the repairs, and selecting a mechanic to complete the repairs. Appellant claims there was no acceptance at closing because the repairs had not been inspected.

■ A buyer has the right to inspect goods prior to acceptance. Minn.Stat. § 336.2–513(1) (1982). When a contract requires payment prior to inspection, payment "does not constitute an acceptance of goods or impair the buyer's right to inspect or any of his remedies." *Id.* § 336.2–512(2). Thus, appellant's actions prior to delivery of the boat on May 1, 1983 do not constitute an acceptance.

■ Acceptance may occur, however, when a buyer "does any act inconsistent with the seller's ownership * * *." *Id.* § 336.2–606(1)(c).

> Under paragraph (c), any action taken by the buyer, which is inconsistent with his claim that he has rejected the goods, constitutes an acceptance.

U.C.C. § 2–606 comment 4 (1978). The trial court found appellant authorized repairs on the boat after their May 1 inspection but before appellant's rejection on May 12. Appellant's authorization of repairs after inspection was inconsistent with their claim of rejection. This conduct constituted acceptance. Minn.Stat. § 336.2–606(1)(c) (1982). Since appellant abandoned any claim of revocation at oral argument, we need not address that issue.

2. The trial court found appellant's conduct in closing the sale, accepting the escrow, and choosing a mechanic modified the terms of the contract. The trial court found appellant accepted and intended to

retain the boat in its condition at closing date. Consequently, the trial court held respondent's obligation to complete the listed repair items was extinguished.

■ The trial court's finding that the parties modified the terms of the contract was erroneous. First, the trial court's finding was based, in part, upon an incorrect finding that appellant accepted the boat on February 17, 1982. As discussed above, appellant did not accept the boat until after May 1, 1982. Payment before inspection does not impair the buyer's remedies. Minn.Stat. § 336.2–512(2) (1982).

> Subsection (2) makes explicit the general policy of the Uniform Sales Act that the payment required before inspection in no way impairs the buyer's remedies or rights in the event of a default by the seller. The remedies preserved to the buyer are all of his remedies * * *.

U.C.C. § 2–512 comment 5 (1978).

■ The acceptance of a nonconforming tender does not automatically modify a contract and extinguish a buyer's remedies.

> Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a nonconformity cannot be revoked because of it unless the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured but *acceptance does not of itself impair any other remedy provided by this article for nonconformity.*

Minn.Stat. § 336.2–607(2) (1982) (emphasis added).

> Where the buyer has accepted goods and given notification (subsection (3) of section 336.2–607) *he may recover as damages for any nonconformity* of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

*Id.* § 336.2–714(1) (emphasis added).

Even if we assume there was a modification of the contract, that modification did not satisfy the U.C.C. requirement of good faith under Minn.Stat. § 336.2–103(1)(b) (1982).

> [M]odifications * * * must meet the test of good faith imposed by this Act. The effective use of bad faith to escape performance is barred, and the extortion of a 'modification' without legitimate commercial reason is ineffective as a violation of the duty of good faith.

U.C.C. § 2–209 comment 2 (1978). In this case, respondents' attempt at modification had no legitimate commercial reason. Respondents knew appellant needed to obtain title to the boat in February 1982 in order to obtain financing and license the boat. Respondents had appellant "over a barrel" and obtained concessions. J. White & R. Summers, *Handbook of the Law under the Uniform Commercial Code* 47 (1980).[1]

### DECISION

Appellant accepted the boat by authorizing repairs subsequent to inspection. Appellant's payment of the purchase price before delivery of the boat did not modify the terms of the contract. Respondents' attempt at modification violated their duty of good faith.

Reversed and remanded.

---

1. The modification could also be considered unconscionable under Minn.Stat. § 336.2–302 (1982).